[Civ. No. 5478. Fourth Dist. Aug. 20, 1957.]

Estate of STELLA ROGERS RUTHERFORD, Deceased. RAY CARNOHAN et al., Appellants, v. AMELIE RUTHERFORD SHAW, Respondent.

Gray, Cary, Ames & Frye for Appellants.

R. M. Switzler for Respondent.

MUSSELL, J.—Stella R. Rutherford died in San Diego on December 17, 1951, at the age of 74 years. By the terms of her will, executed December 7, 1951, the principal asset of her estate, consisting of a quarter section of land in Hale County, Texas, was left to her sister, Maie Carnohan, for life, with remainder to Harry Carnohan, a son of Maie. Maie's two other sons, Ray and Macario, were given remainder interests in mineral rights in decedent's real property in Hale County, Texas. The will expressly provided that nothing was left to decedent's daughter-in-law, Elizabeth Snodgrass Rutherford, and decedent's granddaughter, Amelie Rutherford Shaw.

A petition for probate of the will was filed on December 30, 1955, by Ray Carnohan, the executor named therein, and on January 27, 1956, Amelie Rutherford Shaw filed objections to the probate of the will on the grounds of incompetency of the testatrix, fraud, and on the further ground that the testatrix was coerced and induced to sign the will by the undue influence of Maie Rutherford Carnohan. The issues were tried by a jury which returned a verdict finding that the testatrix at the time of making the will was of sound and disposing mind but that the said will was the result of undue influence exercised upon her by her sister, Maie. Judgment was entered denying probate of the will and proponents' motion for judgment notwithstanding the verdict or for new trial was denied.

Maie Carnohan and her three sons appeal from the judgment upon the sole ground that there is no substantial evidence in support of the jury's finding of undue influence.

The rules of evidence, the weight to be accorded to the evidence, and the province of a reviewing court, are the same in a will contest as in any other civil case. The conclusions of the jury herein from the evidence or testimony that is reasonably susceptible of conflicting or opposing in-

ferences will not be here set aside. (*Estate of Bristol,* 23 Cal.2d 221, 223 [143 P.2d 689]. ▇ Our duty on this appeal is to analyze the record for the purpose of determining whether or not there is any evidence of substantial character which reasonably supports the judgment as applied to the peculiar facts of the case. (*Potter* v. *Pacific Coast Lbr. Co.,* 37 Cal.2d 592, 598 [234 P.2d 16].) ▇ In *Estate of Lingenfelter,* 38 Cal.2d 571, 585 [241 P.2d 990], it is held:

"The indicia of undue influence have been stated as follows: '(1) The provisions of the will were unnatural. . . . (2) the dispositions of the will were at variance with the intentions of the decedent, expressed both before and after its execution; (3) the relations existing between the chief beneficiaries and the decedent afforded to the former an opportunity to control the testamentary act; (4) the decedent's mental and physical condition was such as to permit a subversion of his freedom of will; and (5) the chief beneficiaries under the will were active in procuring the instrument to be executed.' (*Estate of Yale,* 214 Cal. 115, 122 [4 P.2d 153].) These, coupled with a confidential relationship between at least one of the chief beneficiaries and the testator, altogether were held 'sufficient to shift the burden to the proponents of the will to establish an absence of undue influence and coercion and to require the issues to be determined by the jury.' (*Estate of Yale, supra,* p. 123.)' ''

Stella R. Rutherford and her sister, Maie, each received a quarter section of land in Hale County, Texas, from their parents and the quarter section left to Stella, which is sometimes referred to herein as "the farm," constitutes the main asset of her estate, and was worth approximately $16,000.

Stella married in 1900 and had one son, Roger, born in 1901. Soon thereafter Stella obtained a divorce and custody of Roger. Elizabeth Snodgrass married Roger in October, 1922, and there was one child the issue of this marriage, to wit, Amelie, who was born in 1925 and is the contestant herein. Stella's sister, Maie, married and had three sons, Ray, the executor herein, Macario and Harry. When these boys were ready to go to school, Maie moved to Dallas in 1910 and at that time Stella was living with her parents. In 1915 she moved to Dallas and lived next door to Maie until about 1925. In that year Stella moved back to the farm. In 1936 she went to live with her son, Roger, and his family in Dallas, Texas, and lived with them until 1940, sharing a bedroom with Amelie, who was then approximately 11 to 15 years of age. In 1940

Stella left there to reside alone on her farm. Her son, Roger, commenced drinking heavily in 1941 and continued to do so off and on until his death on October 16, 1949.

Elizabeth came to California with Roger in 1947 and in May, 1948, he was sent to Patton State Hospital. He was released in July, 1948, and was sent to a road camp at Palomar in March, 1949. He was released from that camp in September, 1949. Elizabeth obtained an interlocutory decree of divorce from him in October, 1949, and he died on October 16 of the same year.

Stella's sister, Maie, has lived in California since the early 1930's. In September, 1947, she purchased a rooming house in San Diego. Stella came from Texas to live with Maie in July, 1949, and remained with her until the date of Stella's death on December 17, 1951.

There is substantial evidence in the record of the five indicia of undue influence enumerated in *Estate of Lingenfelter, supra.*

■ Amelie Rutherford Shaw, being the granddaughter of the decedent and her sole heir at law, was the natural object of her bounty. Evidence was adduced showing that the decedent was "very devoted to Amelie; that she lived with Amelie and her parents from 1936 to 1940 and shared the same bedroom with Amelie; that in the fall of 1949, when Stella came to San Diego, Amelie visited with her every day and while Amelie was living in Texas she and Stella corresponded regularly; that Stella's letters were always friendly; that after the death of her son, Stella said to Amelie, "Am, you are all I have left. I have nothing to live for" and begged Amelie to take her back home. These and other circumstances shown by the record furnish substantial evidence to support the inference of the jury that the provision of the will leaving nothing to Amelie or her mother was not natural.

■ There is evidence that the dispositions of the will were at variance with the express intentions of the testatrix for the evidence shows that on one occasion when Stella was visiting Roger and his family in San Antonio, Texas, in July, 1949, she discussed Roger's health with Amelie and said, "Well, you know, if anything happens to me or Roger that it will be yours." Blanche Shreve, who was working in her husband's law office, testified that she saw Stella and Maie in the office on several occasions and that on two occasions in 1949, after Roger's death, Stella stated to her she would like to go back to the farm in Texas and live but that Maie would

not let her go, and said, ''Mrs. Shreve, since Roger is gone Am is all I have and I just naturally want her to get everything I own''; that on one occasion in November, 1949, Stella told her she was all alone and wanted her granddaughter, Amelie, to get everything she had and that she wanted to go back to the farm.

There is ample evidence that the relations existing between Maie (a beneficiary under the will) and the decedent afforded Maie an opportunity to control Stella's testamentary act. Stella came to San Diego in July, 1949, and lived with Maie until Stella's death on December 17, 1951. The two sisters were constantly together. They visited their grocery store together every day, they consulted their banker regarding their business affairs, and their interests in the Texas property on several occasions. They opened joint savings and commercial bank accounts, each depositing an identical sum of $1,531 therein, and were always together when they went to the bank.

It appears from the deposition of J. B. Colton, an attorney in San Diego, that he first met Stella on May 14, 1951, when she and Maie came to his office and discussed with him the making of wills for each of them; that Stella wanted to sit in on the conference with Maie in connection with the preparation of her will and indicated that she would, in the course of that conference, determine what she wanted to do about her own will; that he prepared a rough draft of a will and mailed it to her; that Maie later informed him that the rough draft was satisfactory, with one exception, and authorized him to type it in final form for signature ''along with the will which Mrs. Rutherford then indicated she wanted to prepare''; that he prepared the two wills but that they were never executed.

On October 19, 1949, three days after her son's death, Stella and Maie again went to a lawyer in San Diego who prepared a deed conveying Stella's Hale County property to Maie during her lifetime and the remainder to her son, Harry. This deed was never delivered to Maie during Stella's lifetime but was left in the custody of one Mr. Huntley. Maie was present when this deed was executed and testified that she and Stella had discussed it before the date of its execution and both had studied it.

On or about November 23, 1951, Stella and Maie went to Mr. Edmunds, an attorney in San Diego, and in this connection Maie testified that their business with him was to ''get each other a will''; that after their visit to the attorney

(Colton) in San Diego, who prepared the unexecuted wills of October, 1949, the subject of who was to get whose property was the rather general subject of conversation between them. Stella indicated to Attorney Edmunds what she wanted to do with her property and he prepared her will of December 7, 1951, which is involved here. On November 23, 1951, Edmunds also prepared a will for Maie in which she gave Stella a life interest in mineral rights in her Hale County property, with remainder to her three sons, and a life estate in her remaining interest in the Hale County property, with remainder to her son, Harry. This will was executed by Maie on November 23, 1951. On that date Maie informed Edmunds that Stella would not be able to sign her will on that date and asked him to set a time when he could come out where they lived so that Stella could sign her will there. Edmunds went to Maie's home on December 7, 1951, and Stella's will was executed there. The two subscribing witnesses to her will both testified that Maie asked them to witness Stella's will.

On December 14, 1951, the two sisters again visited Edmund's office. Maie then and there executed a deed to her son, Harry, of her Hale County property, subject to a life estate of Maie, and Stella executed a deed to Maie of her (Stella's) Hale County property, reserving a life estate therein. This deed was notarized on December 14, 1951, and recorded in Hale County, Texas, on December 19, 1951.

The petition for probate of Stella's will of December 17, 1951, was not filed herein until December 30, 1955, and Maie testified in this connection that she did not have the will probated earlier because she did not think it was necessary as she "had the deed to the place and it was on file."

 There is substantial evidence that the decedent's mental and physical condition was such as to permit a subversion of her freedom of will. There was a conflict in the testimony as to whether Stella was of sound mind at the time she executed her will and the jury returned a verdict finding that she was of sound and disposing mind at the time. However, there is testimony in the record in this connection which the jury could properly consider in determining whether Stella's mental condition was such as to permit subversion of her freedom of will. There was evidence that she was "childlike"; that she would react to situations as a child of 10 to 13 years of age; that "she had to be told how to do even the little necessities in life almost or else they would not be done"; that she "had to be led" and that "she didn't want

to do what anybody else wanted her to do except aunt Maie''; that Maie always ''took the lead.''

There is substantial evidence that Maie was active in procuring the will involved. She discussed the matter with Stella on several occasions; she went with her to the attorney's office where the will was prepared; arranged for the attorney to bring the will to her home; asked the subscribing witnesses to witness the will; and would not permit Stella to go to her home in Texas after her son's death.

The rule in this state is that courts must refuse to set aside the solemnly executed will of a deceased person upon the ground of undue influence unless there be proof of a pressure which overpowered the mind and bore down the volition of the testator at the very time the will was made.

It is not sufficient for a contestant merely to prove circumstances consistent with the exercise of undue influence; but before the will can be overthrown the circumstances must be inconsistent with voluntary action on the part of the testator. (*Estate of Keeney,* 140 Cal.App.2d 688, 693 [295 P.2d 596, 297 P.2d 967]; *Estate of Welch,* 43 Cal.2d 173, 175-176 [272 P.2d 512].) However, after a careful review of the entire record herein we conclude that we cannot here hold as a matter of law that there was no evidence of substantial character which reasonably supports the judgment herein as applied to the peculiar facts of this case.

Judgment affirmed.

Barnard, P. J., concurred.

A petition for a rehearing was denied September 17, 1957, and appellants' petition for a hearing by the Supreme Court was denied October 16, 1957. Spence, J., was of the opinion that the petition should be granted.