Filed 3/4/22  Estate of Barnes CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| Estate of RICHARD HENYARD BARNES, Deceased. | |
| JOANN BARNES WILLIAMS,<br><br>    Petitioner and Respondent,<br><br>v.<br><br>CELESTINE BARNES,<br><br>    Objector and Appellant. | E075543<br><br>(Super.Ct.No. RIP1600410)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Craig Riemer, Judge.

Affirmed.

Timothy Emse for Objector and Appellant.

Law Office of Michelle D. Strickland, Michelle D. Strickland; Arias & Lockwood and Christopher D. Lockwood for Petitioner and Respondent.

1

# I.  INTRODUCTION

In 2009, Richard Barnes (decedent Richard)[1] executed a will (2009 will), leaving property to his wife, objector and appellant Celestine Barnes (objector Celestine), and to his daughter from a previous marriage, petitioner and respondent Joann Barnes Williams (petitioner Joann).  In 2011, decedent Richard and objector Celestine created a pour-over will and revocable living trust (collectively, 2011 trust), which had the effect of disinheriting petitioner Joann.  They restated the trust in 2014 (2014 Trust), without any significant changes to petitioner Joann or objector Celestine's interests.  Following decedent Richard's death in 2016, petitioner Joann filed a petition pursuant to Probate Code[2] section 17200 et seq., seeking to determine the validity of the trusts and alleging that decedent Richard suffered from progressive mental decline as the result of dementia and either lacked capacity to execute the trusts or did so as the result of undue influence.

Following a bench trial, the trial court issued a detailed statement of decision, which included findings that:  (1) petitioner Joann had standing to challenge the validity of the trusts; (2) the trusts resulted from objector Celestine's undue influence over decedent Richard; (3) objector Celestine breached her fiduciary duty to decedent Richard; and (4) objector Celestine was liable for reimbursement of decedent Richard's estate with respect to any benefits wrongfully received by way of the trusts.  Judgment was entered

---

[1]  We use the parties' first names to more easily identify the parties since the parties are otherwise referenced by various designations, such as objector, decedent, etc. No disrespect is intended.

[2]  Undesignated statutory references are to the Probate Code.

in favor of petitioner Joann on June 19, 2020.  On August 28, the trial court awarded attorney fees to petitioner Joann in a postjudgment order.

On appeal, objector Celestine argues:[3]  (1) the trial court erred in concluding petitioner Joann had standing to bring her claims; (2) petitioner Joann's purported failure to serve other interested parties deprived the trial court of jurisdiction, rendering the judgment void; (3) the trial court's findings of undue influence and breach of fiduciary duty are not supported by substantial evidence; and (4) the postjudgment order awarding attorney fees must be reversed upon reversal of the judgment.  We find no merit in any of these arguments and affirm the judgment and postjudgment order.

## II.  FACTS AND PROCEDURAL HISTORY

A.  *Background*

Decedent Richard and objector Celestine married in 2008.  At the time, decedent Richard had two children from a prior marriage, petitioner Joann and Richard Barnes, Jr.  In 2009, decedent Richard executed the 2009 Will, which provided that petitioner Joann would inherit certain identified assets, and objector Celestine would inherit the remainder upon decedent Richard's death.

In 2011, decedent Richard and objector Celestine executed a pour over will and revocable trust.  The parties agree that the provisions of the 2011 Trust effectively disinherit petitioner Joann.  Decedent Richard and objector Celestine amended and

---

[3]  As explained, *ante*, objector Celestine's brief references numerous arguments at various points.  However, we consider only those arguments separately identified and argued under a heading as required by California Rules of Court, rule 8.204(a)(1)(B).

restated the trust in 2014, but they did not make any changes impacting petitioner Joann's or objector Celestine's stated interests. Decedent Richard died on March 4, 2016.

B. *Procedural Posture of Case*

On April 27, 2016, petitioner Joann filed a petition pursuant to Probate Code section 17200 to determine the existence or validity of the trust. The petition alleged that decedent Richard was medically diagnosed with Alzheimer's disease in 2010, and that decedent Richard either lacked capacity to enter into the trusts or that the trusts were obtained by undue influence. Based upon these allegations, petitioner Joann requested: (1) a determination regarding the existence or validity of any trust document; (2) a determination of title to real property owned by decedent Richard at the time of his death; (3) a finding that objector Celestine breached her fiduciary duty to decedent Richard; (4) a finding that objector Celestine exercised undue influence to obtain the trusts; (5) a finding of elder abuse in violation of Welfare and Institutions Code section 15600 et seq.; and (6) the establishment of a constructive trust.

Objector Celestine filed an answer and opposition to the petition in which she admitted that decedent Richard suffered from Alzheimer's disease and that decedent Richard executed the 2009 Will. However, objector Celestine asserted that decedent Richard had never been declared incapacitated and intended to disinherit petitioner Joann by way of both the 2011 Trust and 2014 Trust. Her answer also asserted the purported affirmative defenses of "failure to state a cause of action," "unclean hands," "offset," "in pari delicto," statute of frauds, and the statute of limitations.

4

Prior to trial, the parties submitted a joint witness list, joint exhibit list, and joint statement of the case containing a "statement of claims and defenses." After an extensive colloquy with counsel regarding the statement of claims and defenses,[4] the trial court identified the following disputed issues for trial based upon the parties' written statement and oral representations to the court: (1) whether the 2011 Trust should be invalidated based upon decedent Richard's lack of capacity; (2) whether the 2014 Trust should be invalidated based upon decedent Richard's lack of capacity; (3) whether both trust documents should be invalidated based upon objector Celestine's exercise of undue influence; (4) whether objector Celestine committed elder abuse in violation of Welfare and Institutions Code section 15600 et seq.; (5) whether objector Celestine committed a breach of fiduciary duty owed to decedent Richard; (6) whether objector Celestine should be deemed to have predeceased decedent Richard pursuant to Probate Code section 259; (7) whether objector Celestine is liable for reimbursement of benefits received from decedent Richard's estate; and (8) whether objector Celestine's bond is liable for any

---

[4] The record discloses that the trial court had considerable difficulty in defining the issues the parties intended to dispute at trial. The trial court admonished counsel for both sides regarding their failure to comply with local rules in preparing pretrial documents; continued the trial; and ordered counsel to meet and confer in order to present a unified set of trial documents identifying witnesses, exhibits, and disputed issues for trial. Despite this, counsel failed to comply, and the trial court was required to orally request clarification on numerous issues prior to trial, including purported claims that petitioner Joann's counsel admitted were never alleged or referenced in the petition, as well as purported affirmative defenses that objector Celestine's counsel acknowledged he had no intent to pursue at trial. The trial court, stating, "I'm not going to ask any questions regarding these any longer because the answers are so bizarre," had to abandon its inquiry into whether the parties would stipulate to the authenticity or admissibility of identified exhibits because counsel could not provide clear answers.

reimbursement owed by objector Celestine. With respect to affirmative defenses, objector Celestine withdrew all of her purported defenses except for unclean hands and pari delicto.

C. *Relevant Evidence at Trial*

The parties stipulated to the following facts: (1) decedent Richard and objector Celestine were married in 2008; (2) they cohabitated as husband and wife during their marriage; (3) an attorney prepared the 2011 Trust documents; (4) a second attorney prepared the 2014 Trust documents; and (5) decedent Richard died in 2016.

Petitioner Joann offered the testimony of eight witnesses, including petitioner Joann, various family members, decedent Richard's former housekeeper, and a medical expert. In general, petitioner Joann testified that, following her father's marriage to objector Celestine, objector Celestine began isolating decedent Richard, detailing instances in which objector Celestine would monitor decedent Richard's phone conversations, intercept phone calls to decedent Richard, prevent her from obtaining information regarding decedent Richard's health, and return cards and gifts mailed to decedent Richard.

Other family members testified that objector Celestine engaged in similar isolating behavior. Several testified that objector Celestine prevented them from personally visiting decedent Richard; and decedent Richard's son testified that, on one occasion, objector Celestine met him at the front door of decedent Richard's home, brandished a firearm, and threatened to use it if he ever returned to try and visit decedent Richard.

6

Decedent Richard's former housekeeper testified that she had been employed by decedent Richard for years but was abruptly terminated from employment in 2012. She received a phone call from decedent Richard in which he spoke in a shaky voice and told her he no longer needed her services. The housekeeper could hear objector Celestine's voice in the background prompting decedent Richard regarding what to say.

Petitioner Joann's medical expert testified that he reviewed decedent Richard's medical records. He expressed the opinion that decedent Richard had begun to show early signs of dementia in 2006; a neurological examination indicated decedent Richard's memory began to markedly decline in 2010; and, by 2015, decedent Richard suffered from advanced dementia.

Objector Celestine offered the testimony of six witnesses, including objector Celestine, the two attorneys who prepared the challenged trust documents, a notary who was present during the execution of the 2014 Trust, the pastor who married decedent Richard and objector Celestine, and a medical expert. Objector Celestine testified that decedent Richard's children had always been hostile and disapproved of her marriage to decedent Richard. She testified that in 2011, petitioner Joann and decedent Richard's son sent various communications expressing their disapproval of decedent Richard's relationship with objector Celestine. This prompted decedent Richard to prepare the 2011 Trust to disinherit his children and "protect" objector Celestine.

The two attorneys who prepared the 2011 Trust and 2014 Trust documents testified that they personally met with decedent Richard, decedent Richard expressed his intentions with respect to each testamentary document, decedent Richard appeared

7

capable of understanding the effect of the trust documents, and that he executed the documents in their presence.

Objector Celestine's medical expert conceded that between 2006 through 2015, decedent Richard experienced a progression of cognitive decline culminating in rapid progressing dementia. However, he opined that those with dementia still have the capacity to make decisions, and that he did not see anything that would suggest decedent Richard did not have the capacity to understand what he was doing at the specific times that he executed the 2011 Trust and 2014 Trust.

D. *Statement of Decision*, *Judgment*, *and Postjudgment Order*

On March 26, 2020, the trial court issued a tentative statement of decision, setting forth its findings on the seven claims and two affirmative defenses identified prior to trial. On June 1, objector Celestine submitted a request for a statement of decision. The request acknowledged the seven claims identified by the trial court, but it requested detailed findings with respect to 35 purported factual or legal disputes related to those claims.

On June 19, 2020, the trial court issued a formal statement of decision. The trial court indicated that it considered the stipulated facts, the testimony of all 14 witnesses who testified at trial, and the exhibits admitted into evidence. It further noted that both petitioner Joann and objector Celestine were biased witnesses, but that it found objector Celestine's testimony lacked credibility. With respect to the seven claims identified prior to trial, the trial court found in favor of petitioner Joann on the claim that the trusts should be invalidated as a result of objector Celestine's undue influence, that objector Celestine

8

breached her fiduciary duty to decedent Richard, and that objector Celestine was liable to reimburse decedent Richard's estate for any benefits received. The trial court further concluded that objector Celestine failed to establish any of her affirmative defenses. Judgment was entered in favor of petitioner Joann that same date.

On August 28, 2020, the trial court awarded attorney fees to petitioner Joann in a postjudgment order.

## III. DISCUSSION

A. *Objector Celestine Has Forfeited Any Issues Not Identified and Discussed Under a Separate Heading in Her Opening Brief*

Initially, we are forced to resolve what issues have been properly presented for our consideration on appeal. On appeal, " 'the appellant must present each point separately in the opening brief under an appropriate heading, showing the nature of the question to be presented and the point to be made; otherwise, the point will be forfeited.' " (*People ex rel. Reisig v. Acuna* (2017) 9 Cal.App.5th 1, 25; see *Hollingsworth v. Heavy Transport, Inc.* (2021) 66 Cal.App.5th 1157, 1172, fn. 3; Cal. Rules of Court, rule 8.204(a)(1)(B).) An appellate court is not required to "consider all of the loose and disparate arguments that are not clearly set out in a heading and supported by reasoned legal argument." (*Provost v. Regents of University of California* (2011) 201 Cal.App.4th 1289, 1294.) The provisions of this rule are "not mere technical requirements but are prescribed for the purposes of facilitating disposition of cases upon appeal and directing the court's attention to the specific errors of law alleged to have been committed by the

9

trial court." (*Richard v. Richard* (1954) 123 Cal.App.2d 900, 902-903 [discussing former version of rule].)

The Courts of Appeal have repeatedly warned that "[w]hen a potential issue or argument is not presented to an appellate court in a separate heading or subheading, that issue or argument is deemed forfeited." (*Phillips v. Honeywell Internat. Inc.* (2017) 9 Cal.App.5th 1061, 1077.) This is true even where the issue may have been referenced, discussed or otherwise alluded to in other portions of the brief. (See *Pizarro v. Reynoso* (2017) 10 Cal.App.5th 172, 179 [failure to provide proper headings forfeits issue discussed, but not identified by a separate heading]; *Hollingsworth*, *supra*, 66 Cal.App.5th at p. 1172 [forfeiture of legal contentions alluded to in introduction, but not included in the argument section of opening brief under an appropriate heading]; *Cox v. Griffin* (2019) 34 Cal.App.5th 440, 453-454 [contention of error raised in " 'introduction' " but not discussed under a separate heading or subheading forfeited].)

Here, the opening brief is far from a model of clarity. It begins with what appears to be an extensive introduction peppered with numerous comments alluding to perceived errors and prejudice that are never discussed again anywhere in the brief. At one point, the introduction sets forth a list of 13 "contentions of appellant to reverse lower court," but many of these points are never discussed further in the brief. The substantive argument section of the brief appears to include multiple claims of error under a single heading, with subheadings that do not clearly separate distinct issues for consideration, and with no effort to separately identify the standard of review applicable to any specific

10

claim. We conclude that, as a result, we are left without any clear indication of the full extent of the claims being asserted by objector Celestine on appeal.

With respect to the issues actually discussed under separate subheadings in the argument section of the opening brief, we distill the following issues: (1) whether the trial court erred in concluding that petitioner Joann had standing to bring her petition; (2) whether the trial court lacked jurisdiction as a result of petitioner Joann's purported failure to serve other beneficiaries of the trusts; (3) whether the trial court's findings of undue influence and breach of fiduciary duty are supported by substantial evidence; and (4) whether reversal of the postjudgment order for attorney fees is required. These are the only issues discussed under separate subheadings in the opening brief, and we deem all other issues forfeited on appeal. We proceed to consider the merits of each of these contentions.

B. *Petitioner Joann Has Standing to Challenge the 2011 and 2014 Trust Documents*

On appeal, objector Celestine contends that petitioner Joann lacked standing to challenge the validity of the 2011 Trust and 2014 Trust. As observed by the trial court, objector Celestine never challenged petitioner Joann's standing prior to or during the trial but, instead, raised the issue for the first time in her request for a statement of decision. Even then, the record shows the theory that objector Celestine argued was that a petition under section 17200, subdivision (a), could only be brought by a trustee or beneficiary of a trust. The trial court disagreed, finding that petitioner Joann showed a sufficient pecuniary interest at stake because the 2009 Will suggested she stood to inherit if the subsequent trusts were invalidated. On appeal, objector Celestine now raises a new

11

theory, arguing that the 2009 Will is itself invalid and, therefore, petitioner Joann cannot be deemed to have standing on this basis. We conclude objector Celestine's new theory on appeal requires resolution of factual disputes and evidence that is not in the appellate record and, therefore, outside the scope of this appeal. We further conclude that, based upon the record actually before us, the trial court did not err in concluding petitioner Joann had standing.

1. Objector Celestine's New Theory Challenging Standing Is Outside the Scope of This Appeal

"Lack of standing is a jurisdictional defect that may be raised at any time, including . . . for the first time on appeal." (*Rialto Citizens for Responsible Growth v. City of Rialto* (2012) 208 Cal.App.4th 899, 912; see *Troyk v. Farmers Group, Inc.* (2009) 171 Cal.App.4th 1305, 1345.)

" 'The scope of appellate review, however, is never defined by the parameters of trial court jurisdiction, but is instead limited by specialized jurisdictional principles that are unique to appellate litigation.' " (*Conservatorship of Gregory D.* (2013) 214 Cal.App.4th 62, 69.) One such limitation is that " '[a]n appellate court's review is limited to consideration of the matters contained in the appellate record.' " (*Sannmann v. Department of Justice* (2020) 47 Cal.App.5th 676, 684.) A second is that "[t]he procedural posture of a case is crucial to determining the proper scope of appellate review." (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1092.) As explained by our Supreme Court: "[t]he procedural posture of a case . . . determines the ability of the parties to exercise their right to present relevant evidence and to the creation of a full

record adequate to enable the reviewing court to make a reasoned decision on the questions before it." (*Ibid.*)

Thus, while the issue of standing is not necessarily forfeited for failure to raise the issue in the trial court proceedings, the issue falls within the scope of appellate review " 'only where it involves "a legal question determinable from facts which are not only uncontroverted in the record but could not be altered by the presentation of additional evidence." ' " (*Franklin Mint Co. v. Manatt*, *Phelps & Phillips*, *LLP* (2010) 184 Cal.App.4th 313, 349 [party precluded from raising challenge to standing requiring resolution of factual disputes on a theory not presented at trial]; see *Save Agoura Cornell Knoll v. City of Agoura Hills* (2020) 46 Cal.App.5th 665, 681, fn. 8 [challenge to standing based upon theory requiring "consideration of factual issues not included in the record" falls outside the proper scope of appellate review].) There can be no doubt that the question of the validity of the 2009 Will necessitates the determination of a variety of factual issues and credibility determinations as exemplified by what has already occurred in this case.

Here, the theory upon which objector Celestine now challenges petitioner Joann's standing was never raised or argued in the trial court proceedings. Thus, petitioner Joann did not have a fair opportunity to respond with evidence on the matter, and the trial court never had an opportunity to make factual findings and credibility determinations on any evidence that may have been relevant. This court is not in a position to make a determination regarding standing based upon a theory that requires resolution of factual

13

disputes and consideration of evidence that is not in the appellate record. Accordingly,

the issue is outside the scope of this appeal and we decline to address it.[5]

    2. <u>The Trial Court Did Not Err in Determining Petitioner Joann Had Standing</u>

<u>Based Upon the Record Before It</u>

    With respect to the theory of standing that was actually raised and argued before

the trial court, we find no error warranting reversal in the trial court's determination that

petitioner Joann had standing.

    "[S]tanding for purposes of the Probate Code is a fluid concept dependent on the

nature of the proceeding before the trial court and the parties' relationship to the

---

    **[5]** Ruling was reserved for consideration with this appeal on appellant's request for judicial notice filed April 5, 2021, and her motion filed May 12, 2021, for this court to make findings under California Rules of Court, rule 8.252(b), and Code of Civil Procedure section 909. The request for judicial notice and the motion are both denied.

    Objector Celestine essentially concedes that the appellate record is inadequate to resolve the standing issue on appeal, requesting that this court take judicial notice of documents that were not presented to the trial court in this case, but filed in a related probate proceeding involving the 2009 Will and further requesting that we make additional factual findings pursuant to Code of Civil Procedure section 909.

    "Reviewing courts generally do not take judicial notice of evidence not presented to the trial court" (*Vons Companies*, *Inc. v. Seabest Foods*, *Inc.* (1996) 14 Cal.4th 434, 444, fn. 3) and, in any event, the truth of matters asserted within the documents identified by objector Celestine could not be considered even if we took judicial notice of them. (*Arce v. Kaiser Foundation Health Plan*, *Inc.* (2010) 181 Cal.App.4th 471, 482.) Thus, we deny objector Celestine's request for judicial notice.

    Additionally, " ' "[a]lthough appellate courts are authorized to make findings of fact on appeal by Code of Civil Procedure section 909 . . . , the authority should be exercised sparingly. [Citation.] *Absent exceptional circumstances*, *no such findings should be made*." ' " (*Diaz v. Professional Community Management*, *Inc.* (2017) 16 Cal.App.5th 1190, 1213.) No such exceptional circumstances are presented in this case. The basis of petitioner Joann's standing was explicitly alleged in her petition. As such, objector Celestine had an opportunity to fully present and litigate her theory before the trial court and has offered no explanation as to why she failed to do so. Thus, we also deny her request to make additional factual findings on appeal.

14

proceeding, as well as to the trust (or estate)." (*Arman v. Bank of Am.* (1999) 74 Cal.App.4th 697, 703.) As a general rule, those who are " 'interested person[s]' have legal standing to contest the provisions of a will or trust" (*Schwan v. Permann* (2018) 28 Cal.App.5th 678, 698); and the Probate Code's definition of " 'interested person' " includes "any person having a property right in or claim against a trust estate or the estate of a decedent which may be affected by the proceeding." (§ 48, subd. (a)(1).) Where the issue of standing is contested, we review the trial court's findings for substantial evidence. (*Estate of Rodda* (1957) 152 Cal.App.2d 300, 302.)

Here, petitioner Joann specifically alleged she was a beneficiary of decedent Richard's 2009 Will and was disinherited by virtue of the subsequent trusts. A copy of the 2009 Will was attached to the petition, its existence was admitted in objector Celestine's answer, and the document was admitted into evidence without objection at the time of trial. On its face, the 2009 Will provides for petitioner Joann to directly inherit certain assets upon decedent Richard's death and to inherit any remainder following the death of objector Celestine. Likewise, the challenged trust documents were admitted into evidence. It is undisputed that their provisions effectively disinherit petitioner Joann, depriving her of the pecuniary benefit she stood to receive under the 2009 Will. Thus, substantial evidence supports the trial court's conclusion that petitioner Joann is an interested person with standing because she has a significant pecuniary interest affected by a determination of the validity of the 2011 Trust and 2014 Trust.

With respect to objector Celestine's argument that the language of section 17200 expressly limits standing to a named trustee or beneficiary of a trust, we believe the trial

15

court correctly rejected this argument. It is true that section 17200 provides that "a trustee or beneficiary of a trust may petition the court under this chapter concerning the internal affairs of the trust or to determine the existence of the trust." (§ 17200, subd. (a).) However, our Supreme Court has recently reminded us that "the Probate Code ' "was intended to broaden the jurisdiction of the probate court so as to give that court jurisdiction over practically all controversies which might arise between the trustees and those claiming to be beneficiaries under the trust," ' " and "an expansive reading of the standing afforded to trust challenges under section 17200 'not only makes sense as a matter of judicial economy, but it also recognizes the probate court's inherent power to decide all incidental issues necessary to carry out its express powers to supervise the administration of the trust.' " (*Barefoot v. Jennings* (2020) 8 Cal.5th 822, 827-828 (*Barefoot*).)

We observe that case law recognizes that the beneficiary of an earlier will may contest a later one (*Estate of Plaut* (1945) 27 Cal.2d 424, 428); a beneficiary named in a trust may challenge a subsequent amendment to the trust removing him as a beneficiary (*Barefoot*, *supra*, 8 Cal.5th at pp. 827-828); a beneficiary named in a subsequent will may challenge the validity of a previously executed trust (see *Estate of Stoker* (2011) 193 Cal.App.4th 236, 240-241 [request to probate subsequently executed will is " 'in practical effect,' an action challenging the validity of the trust"]); and a trustee may contest a subsequently executed will that threatens to impair the pecuniary interests of the trusts' beneficiaries (*Estate of Getty* (1978) 85 Cal.App.3d 755, 760). Clearly, if the Probate Code permits all of these challenges, we see no reason why the beneficiary of a

16

will should be barred from challenging the validity of a subsequently executed trust adversely affecting her pecuniary interests. Following the California Supreme Court's instruction to adopt an expansive reading of the standing afforded under section 17200, we conclude that petitioner Joann has standing to bring such a challenge.

C. *Failure To Join Other Parties Did Not Deprive the Trial Court of Jurisdiction*

Objector Celestine also contends the judgment is void because petitioner Joann failed to serve notice of the proceedings to residual beneficiaries of the 2011 Trust and 2014 Trust. According to objector Celestine, the failure to serve these parties deprived the trial court of jurisdiction, rendering the judgment void. We disagree.

"The failure to join an 'indispensable' party is not 'a jurisdictional defect' in the fundamental sense; even in the absence of an 'indispensable' party, the court still has the power to render a decision as to the parties before it which will stand [citation]. . . . It is for discretionary and equitable reasons, not for want of jurisdiction, that the court may decline to proceed without the absent party." (*Copley v. Copley* (1981) 126 Cal.App.3d 248, 297; see *Tracy Press*, *Inc. v. Superior Court* (2008) 164 Cal.App.4th 1290, 1298-1299; *Golden Rain Foundation v. Franz* (2008) 163 Cal.App.4th 1141, 1155.) While the absent party may subsequently challenge the enforceability of the judgment (see *Estate of Reed* (1968) 259 Cal.App.2d 14, 22), the absence of such parties does not deprive the trial court of personal jurisdiction over the parties who actually appeared in the action or of subject matter jurisdiction of their dispute (*King v. King* (1971) 22 Cal.App.3d 319, 325-329).

17

Thus, even assuming that the absent beneficiaries identified by objector Celestine were entitled to notice, failed to receive notice, and should have been joined in the proceedings, this would not deprive the trial court of jurisdiction to issue a judgment as between objector Celestine and petitioner Joann.[6] Thus, the judgment is not void for lack of subject matter jurisdiction, as argued by objector Celestine, merely because the record does not disclose whether residual beneficiaries in the 2011 Trust and 2014 Trust were served with notice of the action.

*D. The Trial Court's Factual Findings of Undue Influence and Breach of Fiduciary Duty Are Supported by Substantial Evidence*

Objector Celestine also contends the trial court erred when it made a finding that she breached her fiduciary duty to decedent Richard and findings that the 2011 Trust and 2014 Trust were the product of undue influence. We conclude this argument has been forfeited as a result of objector Celestine's failure to fairly summarize the evidence on

---

[6] A limited exception to this rule exists where " 'the absence of a party has precluded the trial court from rendering any effective judgment between the parties before it.' " (*Galdjie v. Darwish* (2003) 113 Cal.App.4th 1331, 1343.) However, objector Celestine has not argued that the absence of the residual beneficiaries deprived the trial court of the ability to render an effective judgment, and such an argument would appear highly questionable in the context of this case. As petitioner Joann points out, the trust instruments challenged in this case are revocable trusts. "Any interest that beneficiaries of a revocable trust have in trust property is 'merely potential' and can 'evaporate in a moment at the whim of the [settlor].' " (*Steinhart v. County of Los Angeles* (2010) 47 Cal.4th 1298, 1319-1320.) Thus, while a trust is revocable, it is the person having the power to revoke the trust, and not the beneficiary, who is considered to hold the rights afforded to the beneficiaries. (§ 15800, subd. (a).) And where a trust may be revoked without the consent of the beneficiaries, the beneficiaries are not necessary and are not indispensable parties to an action involving the trust. (*Title Ins. & Trust Co. v. McGraw* (1945) 72 Cal.App.2d 390, 400.)

18

appeal.  We further conclude that, even in the absence of forfeiture, substantial evidence in the record supports the trial court's findings.

1. <u>General Legal Principles and Standard of Review</u>

"California courts have long held that a testamentary document may be set aside if procured by undue influence."  (*David v. Hermann* (2005) 129 Cal.App.4th 672, 684.) This is because " '[u]ndue influence is pressure brought to bear directly on the testamentary act, sufficient to overcome the testator's free will, amounting in effect to coercion destroying the testator's free agency.' "  (*Ibid.*)  " '[T]he party contesting a testamentary disposition bears the burden of proving undue influence' and '[u]ndue influence must be proven by clear and convincing evidence . . . .' "  (*Doolittle v. Exchange Bank* (2015) 241 Cal.App.4th 529, 545 (*Doolittle*).)[7]

Additionally, a husband and wife are considered to occupy a confidential relationship with each other that "imposes a duty of the highest good faith and fair dealing on each spouse, and neither shall take any unfair advantage of the other."  (Fam. Code, § 721, subd. (b).)  Accordingly, if substantial evidence supports the trial court's

_____

[7] We acknowledge that the standard of proof required to show undue influence appears unsettled.  While some courts have declared that undue influence must be established by clear and convincing evidence, others have held that such determinations are subject only to a preponderance of the evidence standard.  (Compare *Doolittle*, *supra*, 241 Cal.App.4th at p. 545 with *Estate of Corbett* (1954) 123 Cal.App.2d 465, 470-471 [burden is "on the contestant to prove undue influence by a preponderance of the evidence"]; see *Estate of Del Fosse* (1945) 67 Cal.App.2d 490, 498 [preponderance of evidence standard applies in absence of any presumptions].)  We need not resolve this dispute here because we conclude substantial evidence supports the trial court's finding, even if we were to conclude that the trial court could only find undue influence if it were proven by clear and convincing evidence.

19

finding that objector Celestine obtained a financial advantage through the exertion of undue influence over decedent Richard, such a finding would equally support a breach of fiduciary duty in light of objector Celestine's undisputed relationship with decedent Richard.

"In general, a court's finding of undue influence is reviewed for substantial evidence." (*Levin v. Winston-Levin* (2019) 39 Cal.App.5th 1025, 1042.) "When reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011; *Rubio v. CIA Wheel Group* (2021) 63 Cal.App.5th 82, 105.) The reviewing court continues to "view the record in the light most favorable to the prevailing party below and give appropriate deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Conservatorship of O.B.*, at pp. 1011-1012.) We " 'must accept the fact finder's resolution of conflicting evidence; and . . . may not insert [our] own views regarding the credibility of witnesses in place of the assessments conveyed by the judgment.' " (*Rubio*, at p. 105.)

2. Objector Celestine Has Forfeited Her Claims by Failing to Fairly Summarize the Evidence

" ' " 'When a finding of fact is attacked on the ground that there is not any substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the

20

determination as to whether there is any substantial evidence contradicted or uncontradicted which will support the finding of fact.' [Citations.]" [Citation.] The judgment is presumed to be correct. [Citation.] And we presume that the record contains evidence to sustain every finding of fact. [Citations.] It is the appellant's burden to demonstrate that it does not.' " (*Ashby v. Ashby* (2021) 68 Cal.App.5th 491, 511-512 (*Ashby*).)

" 'That burden is a heavy one: " 'A party who challenges the sufficiency of the evidence to support a particular finding must *summarize the evidence* on that point, *favorable and unfavorable*, *and show how and why it is insufficient*. [Citation.]' [Citation.] '[W]hen an appellant urges the insufficiency of the evidence to support the findings it is his duty to set forth a fair and adequate statement of the evidence which is claimed to be insufficient. He cannot shift this burden onto respondent, nor is a reviewing court required to undertake an independent examination of the record when appellant has shirked his responsibility in this respect.' " ' " (*Ashby*, *supra*, 68 Cal.App.5th at p. 512.) When "an appellant fails to fulfill this duty[,] the claim is forfeited." (*Oak Valley Hospital Dist. v. State Dept. of Health Care Services* (2020) 53 Cal.App.5th 212, 237; see *Estes v. Eaton Corp.* (2020) 51 Cal.App.5th 636, 650-651 [" '[i]f one is going to make a "the-facts-compel-that-I-win-as-a-matter-of-law" argument, one's brief must fairly state all the evidence' "].)

Here, in its statement of decision, the trial court expressly stated that it considered the testimony of all 14 witnesses who testified at trial and considered all of the exhibits admitted into evidence. The trial court specifically noted portions of the testimony it

21

found compelling in reaching its findings on undue influence and breach of fiduciary duty and further identified the four witnesses (petitioner Joann, objector Celestine, and their respective medical experts) that it deemed the "principal witnesses."

However, on appeal, objector Celestine has set forth a "summary of relevant facts in the record," which summarizes only the testimony of her own witnesses at trial and references only this evidence in her argument regarding the sufficiency of the evidence.[8] Objector Celestine's briefs essentially ignore the testimony of all of the witnesses called by petitioner Joann. None of their testimony is summarized in the opening brief, and these witnesses are barely even mentioned in petitioner Joann's arguments. Objector Celestine ignores this evidence, despite the fact the trial court expressly referenced portions of this testimony in support of its findings and expressly deemed at least two of these witnesses "principal witnesses" in its statement of decision. Objector Celestine's summary is clearly inadequate to comply with her responsibility to fairly summarize all of the evidence in asserting a claim of insufficiency of the evidence. We conclude objector Celestine has forfeited any claim of insufficiency of the evidence and, for this reason alone, the issue must be resolved against her.

---

[8] Objector Celestine briefly references the testimony of petitioner Joann's medical expert on one occasion, but even then the reference is only to a portion of objector Celestine's cross-examination of the expert that was purportedly favorable to objector Celestine's argument.

3. Even in the Absence of Forfeiture, Substantial Evidence in the Record Supports the Finding of Undue Influence

We also conclude that, even in the absence of forfeiture, substantial evidence in the record supports the trial court's findings of undue influence and breach of fiduciary duty, even under the higher clear and convincing standard of proof.

" 'The indicia of undue influence have been stated as follows: "(1) The provisions of the will were unnatural. . . . (2) the dispositions of the will were at variance with the intentions of the decedent, expressed both before and after its execution; (3) the relations existing between the chief beneficiaries and the decedent afforded to the former an opportunity to control the testamentary act; (4) the decedent's mental and physical condition was such as to permit a subversion of his freedom of will; and (5) the chief beneficiaries under the will were active in procuring the instrument to be executed." ' " (*Estate of Rutherford* (1957) 153 Cal.App.2d 365, 368; see *Estate of Lingenfelter* (1952) 38 Cal.2d 571, 585.) These factors may be established by either direct or circumstantial evidence. (*Lintz v. Lintz* (2014) 222 Cal.App.4th 1346, 1354-1355.) Further, not all of the factors need be present to support a finding of undue influence. (See *Estate of Darlek* (1957) 151 Cal.App.2d 322, 331 [reversing nonsuit despite no evidence of first two factors because even weak evidence of remaining factors is sufficient to permit a jury to find undue influence].)

Here, evidence in the record supports each of the factors relevant to a finding of undue influence. First, multiple family members testified that decedent Richard had an ongoing and loving relationship with petitioner Joann and her family for years, the

23

relationship continued even after decedent Richard's marriage to objector Celestine, and the relationship diminished only as decedent Richard began to experience signs of dementia. There was no evidence to suggest the nature of decedent Richard's relationship with his nephews—nephews who lived out of state and who were not mentioned in decedent Richard's prior testamentary documents but were now named as residual beneficiaries in the subsequent trusts.[9] This was substantial evidence upon which the trial court could rely to conclude that the provisions of the 2011 Trust and 2014 Trust that disinherit petitioner Joann were unnatural. (See *Estate of White* (1954) 128 Cal.App.2d 659, 667 [A will is unnatural where decedent "always lived in apparently the most affectionate relations with his family" but leaves a will in which all his property was granted to strangers.].) Although objector Celestine was not a stranger, substantial evidence supports a finding that disinheriting petitioner Joann, a daughter with whom decedent Richard had a long and loving relationship, was unnatural.

While objector Celestine testified that decedent Richard's desire to disinherit his daughter stemmed from a 2011 dispute sparked by a letter written to decedent Richard, the trial court was not required to accept this explanation and expressly found objector Celestine was not a credible witness. Issues of credibility are for the trier of fact, and this court does not reevaluate the credibility of witnesses on review for substantial evidence, even under the clear and convincing standard of proof.

---

[9] Nor did objector Celestine explain why she agreed to disinherit her own children and grandchildren, with whom she testified she had a good relationship, in favor of decedent's nephew and niece.

Second, the 2009 Will executed by decedent Richard left a life estate to objector Celestine and the remainder to petitioner Joann. With respect to testamentary intent related to petitioner Joann, the 2009 Will closely mirrored that of an earlier will involving decedent Richard's prior wife. Objector Celestine's own testimony confirmed that decedent Richard executed the 2009 Will with testamentary intent. Regardless of whether these wills are enforceable, they constitute evidence of an expressed testamentary intent of the decedent Richard at variance with the dispositions set forth in the subsequent trusts. While the attorneys who prepared the subsequent trust documents testified that decedent Richard made verbal statements regarding a different testamentary intent, at best, this represented conflicting evidence on the issue, not a lack of substantial evidence from which the trial court could have concluded this factor weighed in favor of finding undue influence.

Third, there was testimony that objector Celestine took numerous steps to actively isolate decedent Richard from the rest of his family, including intercepting decedent Richard's calls, turning away visitors, and returning mail addressed to decedent Richard. Notably, objector Celestine chose not to deny or even address any of these allegations when testifying on direct examination. Thus, it was more than reasonable for the trial court to conclude that objector Celestine lacked credibility on this issue and to choose to believe the multiple witnesses who testified to such behavior. This was substantial evidence upon which the trial court could rely to conclude that objector Celestine had the opportunity to control decedent Richard's testamentary acts. (See *Estate of Calaway* (1961) 196 Cal.App.2d 268, 276-277 [evidence that proponent attempted to keep friends

25

from seeing decedent prior to his death is evidence suggesting proponent had an opportunity to control decedent].)

Fourth, both parties' medical experts agreed that decedent Richard suffered from dementia and acknowledged that he experienced a progressive decline in his mental faculties during the time he was married to objector Celestine. Petitioner Joann's expert opined that decedent Richard's medical records showed a noticeable decline beginning in 2010, prior to his execution of the 2011 Trust and 2014 Trust. More than one witness testified that they experienced conversations in which objector Celestine merely prompted decedent Richard regarding what to say, and decedent Richard would repeat those words as his own. Accordingly, there was substantial evidence in the record to support the conclusion that decedent Richard's mental condition was such as to permit a subversion of his free will.

Finally, it is beyond dispute that objector Celestine stood as the chief beneficiary of the changes implemented by the 2011 Trust and 2014 Trust. Specifically, the 2009 Will named petitioner Joann as a beneficiary who stood to directly inherit certain assets upon decedent Richard's death and provided petitioner Joann a remainder interest upon objector Celestine's death. Additionally, the 2009 Will purported to place various restrictions on objector Celestine's life estate in decedent Richard's residence. Under the provisions of the 2011 Trust and 2014 Trust, essentially all of decedent Richard's assets were placed within the trust and, upon decedent Richard's death, all of those assets would be subject to objector Celestine's control as the trustee and used for her benefit as the beneficiary of the trusts. The 2014 Trust did not alter the beneficial changes to objector

26

Celestine. It was further undisputed that objector Celestine was active in procuring the 2011 Trust and 2014 Trust, as she is a joint trustee and settlor. Accordingly, there was substantial evidence in the record to support the conclusion that objector Celestine was the chief beneficiary of the changes made by the trust documents and active in procuring those changes.

Where evidence in the record supports all five of the factors recognized as indicia of undue influence, substantial evidence supports the trial court's finding on this issue. Here, the testimony by family members regarding their prior close relationship with decedent Richard and objector Celestine's isolating behavior was largely uncontradicted. The written instruments suggesting decedent Richard's testamentary intent prior to his cognitive decline from dementia evidenced a different intent than the trust documents executed after his noticeable decline. Objector Celestine's status as the chief beneficiary of the subsequent trusts, and objector Celestine's active role in procuring the subsequent trusts were admitted into evidence without objection; and both medical experts agreed with the overall diagnosis of decedent Richard's status as suffering from progressive dementia. Accordingly, the evidence would be sufficient to support the trial court's findings, even under the clear and convincing standard of proof. Thus, even in the absence of forfeiture, objector Celestine has not shown grounds for reversal of the judgment.

E. *Postjudgment Order Regarding Attorney Fees*

Finally, objector Celestine challenges the trial court's post judgment order awarding attorney fees to petitioner Joann. However, the only argument raised in the

27

opening brief on this point is that a reversal of the judgment compels reversal of this order.  Because we have determined that reversal of the judgment is not warranted, objector Celestine has not presented grounds for reversal of the postjudgment order, and we affirm that order as well.

## IV.  DISPOSITION

The judgment and the postjudgment order awarding attorney fees are affirmed. Petitioner Joann to recover her costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS _____
J.

We concur:


RAMIREZ _____
P. J.


MENETREZ _____
J.

28